UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JUSTIN PANUS,
Institutional ID No. 02167693

MATTHEW BAKER,
Institutional ID No. 02227525

SCOTT ZIRUS,
Institutional ID No. 01640002

TIMOTHY CONE,
Institutional ID No. 01688760

DANNIE CARTER,
Institutional ID No. 02013581

ERIC QUINONES,
Institutional ID No. 02097677

BENJAMIN GRISHAM,
Institutional ID No. 02163986

CORRY GARCIA,
Institutional ID No. 02365886

ZACHARY GUERRA,
Institutional ID No. 02328599

JEFFREY JOHNSON,
Institutional ID No. 02157288

                        Plaintiffs,

v.

PATRICK L. O'DANIEL, *et al.*,

                       Defendants.

No.  1:23-CV-00086-H

## ORDER DENYING CLASS CERTIFICATION AND SEVERING CASES

Plaintiffs are ten state prisoners, all housed in the Robertson Unit of the Texas

Department of Criminal Justice (TDCJ), who are proceeding pro se.  They jointly filed this civil-

rights action under 42 U.S.C. § 1983 against 14 high-ranking TDCJ officials. Plaintiffs seek to proceed jointly and represent a class of "all TDCJ Residents confined within the TDCJ." (Dkt. No. 1 at 28.) They also seek emergency injunctive relief under Federal Rule of Civil Procedure 65. (*See id.*) And they seek reconsideration of another court's order transferring the case here, with a change of venue returning the case to their chosen forum. (Dkt. No. 10.) As explained below, the Court denies Plaintiffs' requests for change of venue, to proceed jointly, for class certification, and for preliminary injunctive relief.

## 1.   Background

Plaintiffs complain about the conditions of their confinement in the Robertson Unit. Specifically, they complain about both the quantity and quality of the food served at the Robertson Unit. (*Id.* at 5–22.) They allege that the food portions are too small and are consistently watered down, resulting in caloric deficiencies. (*Id.*) They also claim that the meals offered are unbalanced and unvaried, resulting in nutritional deficiencies. (*Id.*) And they assert that they are given insufficient time to eat, compounding the caloric and nutritional deficiencies. (*Id.* at 22.) Additionally, they claim that the Robertson Unit kitchen is unsanitary and infested with roaches and mice and that food is stored and prepared at unsafe temperatures. (*Id.* at 23.) Finally, they allege that the drinking water at the Robertson Unit is contaminated because it "periodically emits a pungent odour [sic]; can be foggy or discolored; can have unnatural taste; and can contain foreign particles." (*Id.* at 24.)

Although the plaintiffs are all housed in the Robertson Unit, and the specific factual allegations in the complaint are based on conditions at the Robertson Unit, they assert that these issues are systemic throughout TDCJ and that "this will be clearly established through the Discover Process [sic]." (*Id.* at 25.) They seek declaratory relief and preliminary and permanent injunctive relief. (*Id.* at 29.)

2

2.     **Venue**

Plaintiffs filed their original complaint in the Austin Division of the Western District of Texas, where all or most of the defendants are located. That court transferred the case here because Plaintiffs complain about the conditions of their confinement in the Robertson Unit, which is located within the jurisdictional boundaries of this Court. (*See* Dkt. No. 5.) But the plaintiffs disagree with the transfer. They filed a motion for reconsideration, requesting that the Court transfer this case back to Austin—their preferred forum. (Dkt. No. 10.)

The plaintiffs object to the Austin court's characterization of their claims. (*Id.*) Specifically, they argue that their claims are not limited to the conditions at the Robertson Unit but are representative of conditions at other TDCJ units throughout the system because of the policies and practices implemented by the named defendants. (*Id.* at 2.) They contend that they intentionally named only high-ranking TDCJ officials as defendants and did not name any Robertson Unit employee or officer. (*Id.*) They focus their complaint on policies and practices they believe were implemented in Austin. So, they claim that Austin is both the place where the events giving rise to the complaint took place and the more convenient venue for the defendants.

But courts must consider the essence of a pro se prisoner's claims rather than the label attached. *See United States v. Santora*, 711 F.2d 41, 42 n.1 (5th Cir. 1983). Moreover, civil-rights plaintiffs must support their claims with specific facts and may not simply rely on conclusory allegations. *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir. 1995). Here, all of the plaintiffs' factual allegations are specific to their experiences at the Robertson Unit. They speculate that those conditions are the result of systemic practices, but they offer no factual support for that conclusion. Moreover, they assume without any support that their experience is universal—that is, the conditions they complain about must exist in other units. But despite the plaintiffs' arguments to the contrary, many of their facts appear unique to the Robertson Unit. For

3

example, they describe roach-infested, unsanitary food preparation areas and pungent, possibly contaminated water. (Dkt. No. 1 at 23–24.) Moreover, even though they characterize their claims as policy-based and they do not name any Robertson Unit officers as defendants, the plaintiffs appear to allege that officers at the Robertson Unit act contrary to TDCJ policy. For example, they allege that TDCJ policy dictates that inmates will have 20 minutes to eat, but they are frequently allowed less than half of that time at the Robertson Unit. (*Id.* at 23.)

Court orders "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 749 (E.D. Tex. 2012). "Motions to reconsider should 'serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Crenshaw Enterprises, Ltd. v. Irabel, Inc.*, No. 1:17-CV-322, 2018 WL 6220060, at *3 (E.D. Tex. Feb. 15, 2018) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). Thus, to succeed on a motion to reconsider an interlocutory order under Rule 54(b)—such as an order to transfer venue—the moving party must show: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice. *Id.*

Moreover, a "district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). Here, the Austin court reasonably concluded that a substantial part of the events or omissions giving rise to the plaintiffs' complaint occurred at the Robertson Unit in Abilene, within the jurisdiction of this Court. *See* 28 U.S.C. § 1391(b). And Plaintiffs have not provided any factual support for their argument that Austin is a more appropriate forum. But most importantly, the plaintiffs have not shown any intervening change in controlling law, relied on any newly available evidence, or identified any clear error of law

4

that must be corrected to prevent manifest injustice. Plaintiffs' request that this Court transfer the complaint back to Austin is denied.

**3.    Filing fees**

Here, the Court received payment of one $402 filing fee. (*See* Dkt. No. 4.) The record reflects that Plaintiff Justin Panus submitted a partial payment of $200 and Plaintiff Matthew Baker provided the remaining $202. (*See id.*; Dkt. No. 1-1.) But the PLRA requires *each prisoner* to pay the full filing fee, even if he is granted leave to proceed *in forma pauperis*. 28 U.S.C. § 1915. Prisoners cannot avoid the PLRA's fee requirement by filing jointly. *See Bouribone v. Berge*, 391 F.3d 852, 854–56 (7th Cir. 2004); *Hubbard v. Haley*, 262 F.3d 1194, 1196 (11th Cir. 2001); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (providing that the PLRA cannot be circumvented through the "creative joinder of actions").

So, whether proceeding jointly or separately, the PLRA requires each prisoner-plaintiff to pay the full amount of a filing fee. *See* 28 U.S.C § 1915(b)(1); *Hubbard*, 262 F.3d at 1196. (holding that the PLRA requires a separate action and payment of the full filing fee by each prisoner); *cf. Glenewinkel v. Carvajal*, No. 3:20-CV-2256-B, 2020 WL 5513432, at *3 (N.D. Tex. Sept. 14, 2020) (explaining that the separate-fee requirement is distinct from the permissive joinder inquiry).

**4.    Joinder**

Under Rule 20, plaintiffs may join in a single action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Courts retain discretion, however, to refuse joinder in the interests of fundamental fairness, judicial economy, or

5

avoiding prejudice or delay. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).

Although "the PLRA does not prohibit prisoner-plaintiffs from joining under Rule 20," courts have long recognized the inherent difficulties associated with allowing multiple prisoner-plaintiffs to proceed jointly, especially after the enactment of the PLRA. *Glenewinkel*, 2020 WL 5513432, at *3; *see also Beaird v. Lappin*, 2006 WL 2051034, at *4 (N.D. Tex. 2006). Practical concerns include the possibility of inmate transfers, the need for each individual plaintiff to represent himself and sign all pleadings, the possibility that documents may be altered as they are circulated, the possibility of coercion by prisoners, and potential security issues. *See id.*

Here, each of the plaintiffs signed the complaint. And, at least for now, all of the plaintiffs appear to be housed in the same facility. But because of the well-established, inherent logistical concerns involved in maintaining a lawsuit with multiple prisoner-plaintiffs, the Court finds that joinder should be denied in the interest of judicial economy. Simply put, the restrictive environment of prison will necessarily hamper the plaintiffs' ability to freely communicate with one another, especially in the event of varying custody levels or security classifications. Given the number of plaintiffs and the prison-imposed limitations on supplies and resources, the likelihood of significant delays in communicating with each other and ultimately with the Court is too great to ignore. And, as other courts have pointed out, the potential for revisions made by individual plaintiffs after others have reviewed and signed the pleadings is concerning. The possibility that the plaintiffs may be transferred to different prison units only complicates matters further. Finally, because each plaintiff must represent his own interests and sign all pleadings, the Court finds it more practical to entertain the complaints separately. Thus, joinder is denied at this time and each plaintiff will be required to file a separate complaint asserting his individual claims.

6

Additionally, the Court cannot determine from the single complaint how the alleged conditions of confinement affected each plaintiff. Plaintiffs assert, for example, that six of them have medical conditions requiring a specially prescribed, higher-calorie diet referred to as the "Diet for Health" (DFH). (Dkt. No. 1 at 22.) They allege that the DFH meal plan is different than that of general population, but that it is not strictly adhered to. (*Id.*) While the plaintiffs' assert that both meal services are inadequate, they imply that the meal plans are inconsistently administered. Plaintiffs also assert that one of the plaintiffs contracted and still experiences symptoms of H. Pylori, a bacterial infection that he attributes to the unsanitary and unsafe food handling at the Robertson Unit. Thus, he may have individual claims that the others do not. Although Plaintiffs generally complain about the same conditions, their complaint shows that they have various medical needs and that they have been affected by those conditions in different ways. The likelihood of varying facts and injuries, and the potential for individual claims against varying defendants support separating the plaintiffs' claims into separate suits.

5.    **Class Action**

Plaintiffs' request for class certification must also be denied. Plaintiffs seek relief on behalf of "all TDCJ Residents confined within the TDCJ." (Dkt. No. 1 at 28.)

"[T]he class action device exists primarily, if not solely, to achieve a measure of judicial economy, which benefits the parties as well as the entire judicial system. It preserves the resources of both the courts and the parties by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998). The Court "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). The decision to certify a proceeding as a class action lies within the broad discretion

of the district court, exercised within the limits set by Rule 23 of the Federal Rules of Civil Procedure. *Id.*

"Rule 23(a) provides that one or more members of a class may sue on behalf of all if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class." *Shipes v. Trinity Industries*, 987 F.2d 311, 316 n.3 (5th Cir. 1993); Fed. R. Civ. P. 23(a)(1)–(4). These requirements are more commonly referred to as "numerosity, commonality, typicality, and adequacy of representation."

Rule 23(b) provides that an action may be certified as a class action if the requirements of subsection (a) are satisfied and, in addition, if the court finds that separate lawsuits would result in inconsistent adjudications or adjudications that would substantially impair the interests of parties not in the class, final injunctive relief or declaratory relief would be appropriate for the class as a whole, or questions of law or fact predominate over any questions affecting the individual members of the class and the class action is the "superior" method for handling the class. Fed. R. Civ. P. 23(b). The parties seeking certification bear the burden of proving compliance with Rule 23. *Castano*, 84 F.3d at 740; *see also Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 471 (5th Cir. 1986) (holding that certification requires proof of both subsections (a) and (b) of Rule 23).

Plaintiffs have not met the requirements of Rule 23(a). Even if the plaintiffs could establish numerosity, commonality, and typicality, they cannot establish adequacy of representation. Plaintiffs are proceeding pro se. And courts consistently conclude that "the competence of a layman representing himself [is] clearly too limited to allow him to risk the rights of others." *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that it is

8

plain error to permit a prison inmate unassisted by counsel to represent a class of fellow

inmates); *see also McGrew v. Texas Bd. of Pardons and Paroles,* 47 F.3d 158, 162 (5th Cir. 1995)

(finding it dubious that a pro se prisoner could serve as an adequate class representative,

particularly when his own pleadings failed to state a cause of action); *see also Rudzavice v. Wilson,*

No. 4:21-cv-176, Dkt. No. 4 (N.D. Tex. 2021) (collecting cases).

      Moreover, prisoners cannot file legal papers on behalf of other individuals. "It is well

settled that with one narrow exception only licensed lawyers may represent others in court."

*Thomas v. Estelle,* 603 F.2d 488, 489 (5th Cir. 1979).  The narrow exception applies only to

prisoners seeking postconviction habeas relief with the help of "jail-house lawyers," not to civil-

rights actions like the one here.  *Id.*  Non-attorney individuals may not use the next-friend device

as a pretense for the unauthorized practice of law.  *Weber v. Garza,* 570 F.2d 511, 513 (5th Cir.

1978).  Parties may "plead on their own behalf or [may] be represented by counsel," but one

prisoner cannot advance arguments on behalf of another.  28 U.S.C. § 1654; *Mohwish v.

Muhammad,* 248 F.3d 1139, 2001 WL 85900, at *1 (5th Cir. Jan. 2001).  Because Plaintiffs are

proceeding pro se, they cannot show that they could fairly and adequately protect the interests

of all TDCJ Residents.

      The Court notes that some of Plaintiffs' claims relate generally to the practices, customs,

or general conditions of confinement that may affect other similarly housed inmates.  But all of

their factual allegations are specific to conditions at the Robertson Unit.  Plaintiffs do not just

seek to represent a class of Robertson Unit inmates, they seek to represent all TDCJ inmates.

And they acknowledge that some, but not all of the individual plaintiffs have unique dietary

needs based on different medical conditions.  Moreover, there are some alleged facts that are

unique to a single plaintiff, like Plaintiff Johnson's alleged H. Pylori infection.  Plaintiffs'

unsupported conclusion that the conditions at the Robertson Unit represent the whole state-wide system is insufficient to satisfy the commonality and typicality requirements of Rule 23(a).

Plaintiffs have also failed to demonstrate that this complaint complies with Rule 23(b). *See McGrew*, 47 F.3d at 162 (denying class certification when an inmate alleged numerous other inmates had an interest, but he did not address any other requirements of Rule 23). The Court has reviewed the complaint and finds that no argument can be made that "inconsistent or varying adjudications" of each individual potential plaintiff's claims will establish incompatible standards of conduct for TDCJ sufficient to justify certification under Rule 23(b)(1)(A).

And although the plaintiffs' complaint appears to raise questions of law and fact that might be common to others as required by Rule 23(b)(3), they also allege claims that are specific to individual plaintiffs. Moreover, many of the plaintiffs' general allegations are conclusory, or based on extrapolation from individual experiences, and wholly insufficient to demonstrate that group fact questions predominate over the fact questions affecting each individual potential plaintiff.

In short, Plaintiffs may not represent a class as long as they are acting pro se, and in any event, they have not met the requirements of Rule 23. As a result, the Court finds that Plaintiffs' request for class certification must be denied.

**6.    Preliminary Injunctive Relief**

"An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). A party seeking a preliminary injunction or temporary restraining order must prove four elements:

1.    a substantial likelihood of success on the merits of his case;

2.    a substantial threat that the plaintiff will suffer irreparable injury;

3.     that the threatened injury outweighs any harm that the injunctive order might cause the defendant; and

4.     that the injunction is in the public interest.

*Women's Med Ctr. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). Injunctive relief will be denied if the movant fails to prove any of these four elements. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

A federal court may issue a temporary restraining order without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

The Prison Litigation Reform Act (PLRA) further limits the authority of federal courts to grant injunctions in cases concerning prison conditions. With respect to prison conditions, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Courts must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.*

When a plaintiff requests injunctive relief that would require the court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Principles of equity militate heavily against granting injunctive relief except in the most extraordinary circumstances. *Id.* In the prison context, courts should exercise great caution when considering injunctive relief. *Bell v. Wolfish*, 441 U.S. 520, 547-48, 562 (1979) (recognizing the wide-ranging deference given to prison administrators to maintain institutional security and warning courts against becoming "enmeshed in the minutiae of prison operations").

Plaintiffs expressly seek relief under Rule 65. They verified their complaint with a declaration under penalty of perjury, but they have not shown that any immediate or irreparable harm will occur if the preliminary injunction does not issue before the defendants may be heard. They suggest that the conditions at the Robertson Unit have been going on for a while. And they discuss at length the potential harms of malnutrition. But they do not allege that any of them have suffered any of those harms. None allege that they have lost weight or experienced any specific symptoms from the alleged vitamin, mineral, or caloric deficiencies in the Robertson Unit meal service. Nor do they allege that any acute, irreparable harm is imminent.

Moreover, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their claims. First, they sue only supervisory officials, not those directly involved in food preparation or service at the Robertson Unit. *See Stine v. Fed. Bureau of Prisons Designation & Sentence Computation Unit*, No. 3:13-CV-4253-B, 2013 WL 6640391, at *2 (N.D. Tex. Dec. 17, 2013) (dismissing a complaint under the three-strikes rule after finding that "none of the claims that he is under imminent danger of serious physical injury is directly attributable to the conduct of the [named defendants] or can be immediately redressed by this lawsuit").

"A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). A supervisor may also be liable if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter*, 659 F.3d at 446 (quoting *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th

12

Cir. 2009)). Liability for policy failures and training failures both require that the defendant acted with deliberate indifference. *Porter*, 659 F.3d at 446.

Here, although the plaintiffs sue only high-ranking officials that they identify as policymakers for TDCJ, they allege that the meals served at the Robertson Unit violate the policies created by the defendants. In other words, they do not allege that the official policies implemented by the defendants are unconstitutional; rather, they complain that the meal service at the Robertson Unit is unconstitutional because it does not comply with the official policies. (*See* Dkt. No. 1 at 8) ("The TDCJ 'Correctional Managed Health Care Therapeutic Dietary Policy and Procedures Manual' requires that regular meals consist of between 2,400 and 2,700 calories. However, regardless of the mandates of TDCJ policy and USDA guidelines, TDCJ residents are receiving caloric counts that are regularly between 1,100 and 1,600 per day.") Similarly, they admit that TDCJ's policy requires that inmates be given 20 minutes to eat their meals, but they allege that they receive an average of less than six minutes to eat in the Robertson Unit dining hall. (*Id.* at 23.) Moreover, they acknowledge that "the conditions may have been caused by exigent circumstances," including legislative budget cuts, inflation, and supply chain issues.

Plaintiffs do not allege that the named defendants affirmatively participated in any of the acts that caused the alleged constitutional deprivations. Nor do they demonstrate that the defendants implemented an unconstitutional policy that caused the deprivations. To the contrary, they acknowledge that the defendants' official policy requires the Robertson Unit to provide nutritionally adequate and well-balanced meals for the inmates confined there. Nevertheless, they speculate, without offering any factual support, that the "[d]efendants have chosen to adopt a policy and practice of limiting the amount of food items distributed to each unit," which "force[s] the administrations on those units to drastically water down the meals fed

13

to TDCJ Residents in order to make the food stretch." (Dkt. No. 1 at 6.) But they do not provide any facts to suggest that any named defendant is aware of but disregarded the alleged conditions at the Robertson Unit. Thus, the Court finds that they have failed to demonstrate a substantial likelihood of success on the merits. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety[.]")

In sum, Plaintiffs have failed to satisfy the elements for a temporary restraining order. Additionally, their request for injunctive relief is wide-ranging and would necessarily require the court to interfere with the administration of a state prison. Thus, it is not permitted by the PLRA. The request for emergency injunctive relief is denied. But this analysis is limited to consideration of the extraordinary remedy requested and should not be read to state an opinion on the ultimate merits of Plaintiffs' underlying constitutional claims. As explained below, each plaintiff will have the opportunity to amend his complaint to pursue his individual claims and to correct the deficiencies identified above.

## 7.   Conclusion and Instructions

For these reasons, the Court orders:

1.   Plaintiffs' requests for transfer of venue, joinder, and class certification are denied.

2.   The complaint of Justin Panus will continue under this civil action no. 1:23-cv-00086. All other plaintiffs will be terminated from this action.

3.   The complaints of Matthew Baker, Scott Zirus, Timothy Cone, Dannie Carter, Eric Quinones, Benjamin Grisham, Corry Garcia, Zachary Guerra, and Jeffrey Johnson will be severed into separate actions as to each plaintiff. The Clerk is directed to assign each new civil

action to the undersigned United States District Judge and to file a copy of the original
complaint (Dkt. No. 1) and this order in each of the new civil actions.

       4.     Each plaintiff must, within 20 days from the date of this order:

           (i)    pay the filing fee of $402.00[1] or the balance of the filing fee if a partial payment has been submitted, or file with the Clerk an individual, signed, form application to proceed *in forma pauperis* with a certified copy of his inmate trust account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of his complaint, certified by one of the officers at the institution where the plaintiff is incarcerated, and

          (ii)   submit a complete amended complaint—setting out only his own claims—on the court-approved form for civil-rights cases. Each plaintiff must answer each question on the form and must present his entire complaint on the form unless it is necessary to attach additional pages. The plaintiff must (1) identify each defendant, (2) describe the unconstitutional or unlawful acts or omissions of each defendant, and (3) describe when and where each act or omission occurred. The plaintiff may not incorporate by reference, or otherwise, any portion of the complaint previously submitted and may not attach the prior complaint or amended complaint as an exhibit. The amended complaint must be signed.

    **Failure of any of the plaintiffs to file the required documents will result in a denial of**

*in forma pauperis* **status and a dismissal of that plaintiff's complaint for want of prosecution**

**without further notice, unless the filing fee of $402.00 is timely paid.**

    The Court further finds that:

       1.     Service of process will be withheld pending judicial screening pursuant to

28 U.S.C. § 1915(e)(2).

       2.     No amendments or supplements to the complaint may be filed without prior

Court approval. A complete amended complaint must be attached to any motion to amend.

---

[1] When a prisoner plaintiff has been granted leave to proceed *in forma pauperis*, a $350 filing fee will be deducted from the prisoner's account. *See* District Court Miscellaneous Fee Schedule. If the prisoner plaintiff has not been granted leave to proceed *in forma pauperis*, he must pay the $350 fee plus a $52 administrative fee, resulting in a total filing fee of $402. *See id.*

3.     All discovery in this case is stayed until an answer is filed or until further order.

4.     No motions for appointment of counsel may be filed until the Court has completed its screening pursuant to 28 U.S.C. § 1915(e)(2), which may include a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), or other proceedings deemed appropriate by the Court.

5.     Each plaintiff must promptly notify the Court of any change of address by filing a written notice of change of address with the Clerk.  Failure to file this notice may result in that plaintiff's case being dismissed for want of prosecution.

So ordered.

Plaintiffs are advised that State law may require the forfeiture of good-conduct time credits as a sanction for a state or federal lawsuit brought by an inmate while in the custody of the Texas Department of Criminal Justice (TDCJ), or while the inmate is in custody awaiting transfer to TDCJ, that is dismissed as frivolous or malicious.  *See* Tex. Gov't Code Ann. § 498.0045.

Plaintiffs may each obtain the court-approved forms necessary for complying with this order in the law library of his current prison unit.

Dated June **13**, 2023.

_____

JAMES WESLEY HENDRIX
United States District Judge

16